TEXAS PROCESSED PLASTICS, INC., Appellant,

v.

GRAY ENTERPRISES, INC., et al., Appellees.

No. 1291.

Court of Civil Appeals of Texas, Tyler.

Dec. 20, 1979.

David Sorrell, Hulon B. Brown, Brown, Brown & Sorrell, Jacksonville, for appellant.

John C. Hardy, William C. Lowrey, Wilson, Miller, Spivey, Sheehy, Knowles & Hardy, Tyler, for appellees.

McKAY, Justice.

This is a breach of express warranty case based on an oral contract for the sale of plastic material. To clarify the discussion of this somewhat complex case, following are the parties and their representatives: appellant Texas Processed Plastics, Inc. (Hayden Brown and Billy Powell); appellee Dumond, Inc. (Don Ray); appellee Gray Enterprises, Inc. (Fred Bruley); and appellee B & D Molded Products, Inc. (Thomas Outlaw).

Pursuant to an oral agreement on June 21, 1974, appellee Dumond, Inc. purchased from appellant Texas Processed Plastics, Inc. approximately 192,000 pounds of polyethylene plastic material. Dumond, Inc. sold this material to appellee Gray Enterprises, Inc. and then Gray Enterprises, Inc. sold the material to appellee B & D Molded Products, Inc. The appellant shipped the material directly to B & D Molded Products, Inc.; Dumond, Inc. and Gray Enterprises, Inc. acted as independent buyers and sellers of the plastic material.

Prior to the oral agreement, Dumond, Inc. obtained a 1,000 pound container of the plastic material from Texas Processed Plastics, Inc. and sent the container to Gray Enterprises, Inc. Fred Bruley of Gray Enterprises, Inc. took 30 pounds of the material and sent it to B & D Molded Products, Inc. Based on this 30 pound portion, B & D Molded Products, Inc. told Gray Enterprises, Inc. that it would purchase the material.

The plastic material which B & D Molded Products, Inc. received did not conform to the 30 pound sample in that it contained excessive water and waste products. At this point the testimony is conflicting. Appellees maintain appellant agreed that, if B & D Molded Products, Inc. would have the material processed into a usable form in conformity with the sample, appellant would pay for the processing and provide an expert in plastics to aid in the processing. Appellant denies that any such agreement was made. In any event, B & D Molded Products, Inc. conditionally accepted the material based on that understanding. Subsequently, it was found that the material was so impure that it could not be processed to meet the quality of the sample. The appellees brought suit for damages caused by appellant's failure to ship goods which conformed with the sample, for damages caused by appellant's breach of the agreement to pay for processing the material, and for refund of the purchase price.

The jury found that appellant, Texas Processed Plastics, Inc., delivered to appellee Dumond, Inc., a sample of the plastic material upon which appellee Dumond relied in purchasing the material and that appellant warranted the material would conform to the sample; that the material purchased by appellee Dumond, Inc., did not conform to the sample; that appellees accepted the nonconforming material upon the promise of appellant that appellant would pay for the processing costs; that the material could not be processed into a usable form; and that appellees incurred $12,500.00 in expenses in attempting to have the material processed into usable form. Judgment was entered for appellees against appellant for $12,500.00. Appellant duly perfected this appeal bringing seven points of error. We will address appellant's seventh point of error first.

Appellant's seventh point of error maintains that appellee B & D Molded Products, Inc. cannot recover under a theory of breach of express warranty because there was no privity of contract between appellant and B & D Molded Products, Inc. If any express warranty was created, appellant contends that it only existed between appellant and appellee Dumond, Inc. Appellees argue that this case was tried upon the theory that all appellees were one party in interest and that appellant judicially admitted this fact in its brief which states: "there is complete identity of interest on each side of this cause." Appellees further argue Dumond, Inc. and Gray Enterprises, Inc. were acting as agents for B & D Molded products, Inc. and that it is well settled under the law of agency that a third party is bound by a contract made with an agent even though the agent's authority is undisclosed to the third party.

The version of the Uniform Commercial Code adopted by the Texas legislature is silent on the requirement of privity of contract. Thus, Section 2.318 of the Texas U.C.C. provides in relevant part:

This chapter does not provide whether . . . the buyer . . . may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination.

Accordingly, we must consider prior decisions of Texas courts to resolve the question on the requisite of privity.

■ It is well established in Texas that privity of contract is not required when a cause of action is based upon principles of strict liability in tort. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967); *Proctor & Gamble Manufacturing Co. v. Langley*, 422 S.W.2d 773 (Tex.Civ.App.—Dallas 1967, writ dism'd). However, where the cause of action is based upon a contractual theory of liability Texas courts have traditionally required privity between the parties. *Pioneer Hi-Bred International, Inc. v. Talley*, 493 S.W.2d 602, 608 (Tex.Civ.App.—Amarillo 1973, no writ); *Thermal Supply of Texas, Inc. v. Asel*, 468 S.W.2d

927, 929 (Tex.Civ.App.—Austin 1971, no writ). The requirement of privity has been eroded in the recent case of *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977) where our Supreme Court held that a manufacturer can be held liable, without regard to privity, for economic loss which results from a breach of the implied warranty of merchantability under the U.C.C. Notably, the court stated that remedies based upon breach of express warranty under the U.C.C. are not affected by its decision. 557 S.W.2d 80.

■ The rule is well recognized in Texas that strict liability in tort does not apply to situations involving economic loss only but rather the principles of the law of sales under the U.C.C. should be applied in such cases. *Nobility Homes of Texas, Inc. v. Shivers*, supra at 79; *Thermal Supply of Texas, Inc. v. Asel*, supra; *Eli Lilly and Co. v. Casey*, 472 S.W.2d 598, 599 (Tex.Civ.App.—Eastland 1971, writ dism'd). Thus, the rule has evolved that in situations involving solely economic loss based upon breach of express warranty, privity of contract between the parties is required. In the case at bar appellees' suit was brought to recover damages based upon a breach of express warranty, i. e., a suit sounding on contract for economic loss rather than in tort for injuries to person or property. Therefore, in order for appellee B & D Molded Products, Inc. to recover under a theory of breach of express warranty from appellant Texas Processed Plastics, Inc., privity of contract must exist between the parties.

■ Appellees first contend that appellant judicially admitted in its brief that all appellees are one party in interest and therefore, the privity requirement is satisfied. It is our view that this statement by appellant is not a judicial admission. The term judicial admission "refers to a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof so that neither court nor jury is required to make any finding in regard to it." 2 McCormick & Ray, Texas Law of Evidence § 1127 (2d Ed. 1956). As

long as the admission stands unretracted, the fact alleged or admitted is accepted as true by the court and jury, and no testimony by the admitter tending to show its falsity will ordinarily be required. *Aetna Life Insurance Co. v. Wells*, 557 S.W.2d 144, 147 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.); *McCormick & Ray*, supra. Additionally, the admission must be deliberate, clear, and unequivocal. *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 418, 419 (1960); *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224, 228, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd). The aforequoted statement is not sufficiently clear and definite for this court to accept as true and binding on appellant. Moreover, even if it be granted that the statement in question is an admission, it appears that appellant has implicitly retracted the statement by asserting in its seventh point of error that no privity exists between the parties. See *Griffin v. Superior Insurance Co.*, supra.

Appellees further argue that, since an agency relationship existed between B & D Molded Products, Inc. (the principal) and the intermediate buyers Gray Enterprises, Inc. and Dumond, Inc., appellant and B & D Molded Products, Inc. were in privity and therefore, the express warranty ran through both intermediate parties to B & D Molded Products, Inc. The Restatement (Second) of the Laws of Agency § (1) defines the agency relationship as follows:

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent by the other to so act.

See *Brown v. Cole*, 276 S.W.2d 369, 378 (Tex.Civ.App.—Dallas 1955), aff'd 155 Tex. 624, 291 S.W.2d 704 (1956); *Great Southern Life Insurance Co. v. Williams*, 135 S.W.2d 241, 245 (Tex.Civ.App.—Amarillo 1940), writ dism'd, judgmt. correct).

■ In regard to the creation of an agency relationship, the general rule is well stated as follows:

> As between the parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent shall act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them. *First National Bank of Mineola v. Farmers and Merchants State Bank*, 417 S.W.2d 317, 330 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.) (quoting 2 Am.Jur.2d 428 Agency, Sec. 17).

■ In the absence of any claim of or exercise of any control by one party over the activities of another, there can be no agency relationship. *Hughes Engineering Co. v. Eubanks*, 307 S.W.2d 603, 605 (Tex. Civ.App.—Fort Worth 1957, no writ); *American Employers Insurance Co. v. Kilgore*, 412 S.W.2d 67, 69 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.); *First National Bank of Mineola v. Farmers and Merchants Bank*, supra.

■ In the case at bar, Don Ray of appellee Dumond, Inc. (the first buyer of the material) testified that he had nothing to do with the sample that was sent to B & D Molded Products, Inc. by Gray Enterprises, Inc.; that he made no guarantee to B & D Molded Products, Inc. concerning the plastic material; that he did not know to whom Gray Enterprises, Inc. was going to ship the material; and that he did not in any way deal with B & D Molded Products, Inc. in the sale of the plastic material. Outlaw of B & D Molded Products, Inc. testified that he had never talked nor negotiated with Don Ray or Dumond, Inc. before the plastic was delivered and that the transaction was based solely on his dealings with Fred Bruley of Gray Enterprises, Inc. Nowhere do the facts show that Dumond, Inc. was authorized to act for B & D Molded Products, Inc. nor is there any evidence showing that the actions of Dumond, Inc. were under the control of B & D Molded Products, Inc.; clearly there was no "meeting of the minds" between the two parties.

It is undisputed that Dumond, Inc. acted in its own name when it purchased the plastic material; Dumond, Inc. was an independent business buying and selling plastic material. Under the facts of the instant case, it is our opinion that no principal-agent relationship existed between Dumond, Inc. and B & D Molded Products, Inc.

Because we have decided that no agency relationship existed between appellee Dumond, Inc. (the first buyer of the goods) and appellee B & D Molded Products, Inc. (the principal) we find it unnecessary to determine the question of whether an agency relationship existed between appellee Gray Enterprises, Inc. (the second buyer) and B & D Molded Products, Inc. If an express warranty by sample was, in fact, created, it existed only between Texas Processed Plastics, Inc. and Dumond, Inc. Therefore, since B & D Molded Products, Inc. was not in privity with Dumond, Inc. or Texas Processed Plastics it cannot recover against Texas Processed Plastics, Inc. for breach of express warranty.[1]

In *Luse v. Valley Steel Products Co.*, 293 F.2d 625 (5th Cir. 1961) the Fifth Circuit was presented with a similar situation. In that case appellant Luse ordered certain oil well tubing from Transcontinental Oil Company which, in turn, ordered the tubing from appellee Valley Steel, specifying that the tubing be shipped to Transcontinental in care of Luse. When the tubing arrived it did not meet the specifications; Luse brought suit based on breach of warranty against both sellers. The district court found that there were two separate transactions, one between Transcontinental and Luse, and one between Transcontinental and Valley Steel and that Luse had no direct dealings with Valley Steel at any time. Judgment was entered against Transcontinental Oil Company but not against appellee Valley Steel. Appellant Luse appealed, contending that the district court erred in failing to hold Valley Steel liable to him for damages for breach of warranty. The Fifth Circuit affirmed the holding that

the evidence did not show any contact between Luse and Valley Steel and that two separate transactions were involved. The court applied the following Texas rule of law:

> It is the prevailing rule that the mere resale of a warranted article does not give the subpurchaser a right to sue the original seller for damages caused by defects in . . . the quality of the goods. 293 F.2d 626, quoted from *Brown v. Howard*, 285 S.W.2d 752, 754 (Tex.Civ. App.—San Antonio 1955, writ ref'd n. r. e.)

Also see *Allen v. Ortho Pharmaceutical Corp.*, 387 F.Supp. 364 (S.D.Tex.1974); *Baylor v. Eastern Seed Co.*, 191 S.W.2d 689, 691 (Tex.Civ.App.—San Antonio 1945, no writ). Therefore we sustain appellant's seventh point of error.

Appellant's first two points of error are argued together and contend that there is no evidence or insufficient evidence to support the jury's answers to Special Issue No. 5 that appellees accepted the nonconforming material only upon appellant's promise that appellant would pay for the processing costs necessary to make the material conform to the sample and that such material could, in fact, be so processed. In view of our disposition of appellant's seventh point of error, we find it unnecessary to rule on these points.

Even though the jury found that Texas Processed Plastics, Inc. made an agreement to process the plastic material, B & D Molded Products, Inc. cannot recover against Texas Processed Plastics, Inc. on the basis that it breached this agreement. A careful examination of the record reflects that the only agreement made by appellant, if any, arose between Texas Processed Plastics, Inc. and Dumond, Inc. Fred Bruley of Gray Enterprises, Inc. testified that he had no contact with Texas Processed Plastics, Inc. concerning either purchasing or drying the material and that he told Thomas Outlaw of B & D Molded Products, Inc. that he would pay for the processing of the materi-

1. The record reflects that B & D Products, Inc. was the only appellee which suffered actual damages by the appellant's alleged breach of the warranty.

al. Thomas Outlaw testified that Texas Processed Plastics did not tell either him or Fred Bruley that they would pay to process the material and that Bruley stated that he "was going to have it cleaned up and processed and pay for it." Both Billy Powell and Hayden Brown of Texas Plastic Products testified that they did not deal with anyone except Don Ray of Dumond, Inc. Because we have previously held that no agency relationship and no privity of contract existed between B & D Molded Products, Inc. and Dumond, Inc., if an agreement was made between Texas Processed Plastics, Inc., and Dumond, Inc., it would not run to or be enforceable by B & D Molded Products, Inc., the only appellee which suffered actual damages as a result of the breach of the alleged agreement. Furthermore B & D Molded Products, Inc. may not be considered a third party beneficiary of the alleged agreement because there is no evidence in the record that it was the intention of the contracting parties to benefit B & D Molded Products by the alleged agreement. See *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503, 504 (Tex.1975); *Knight Construction Co. v. Barnett Mortgage Trust*, 572 S.W.2d 381, 382 (Tex.Civ.App.—Houston [14th Dist.] 1978, ref'd n. r. e.).

In view of our disposition of the previous points of error it is unnecessary to address appellant's third and fourth points of error.

The judgment of the trial court is reversed, and judgment is rendered that appellees take nothing.

SUMMERS, C. J., not sitting.