191 N.J. Super. 22 (1983)
465 A.2d 530
SPRING MOTORS DISTRIBUTORS, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
FORD MOTOR COMPANY; CLARK EQUIPMENT COMPANY, A CORPORATION; CLARK TRANSMISSION, A DIVISION OF CLARK EQUIPMENT COMPANY AND TURNPIKE FORD TRUCK SALES, INC., A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 1983.
Decided August 29, 1983.
*25 Before Judges KING and McELROY.
Krevsky & Silber, attorneys for appellant (Fred Rabinowitz, on the brief).
Pitney, Hardin, Kipp & Szuch, attorneys for respondents Ford Motor Company and Turnpike Ford Truck Sales, Inc. (J. Michael Nolan, Jr., on the brief).
Crummy, Del Deo, Dolan & Purcell, attorneys for respondent Clark Equipment Company (Richard S. Zackin and John H. Klock, on the brief).
The opinion of the court was delivered by KING, J.A.D.
This issue is presented to us: May there be a recovery for economic loss, in addition to recovery for damages for personal injury and property loss, under the doctrine of strict liability in tort? We conclude that recovery of consequential economic damages under the doctrine of strict liability in tort is permitted in this jurisdiction, especially since the decision of the Supreme Court in H. Rosenblum, Inc., Etc. v. Adler, 93 N.J. 324, at 340 (1983).
This appeal is taken from a summary judgment in defendants' favor dismissing a three-count complaint. In the complaint filed on December 23, 1980 plaintiff alleged that it had purchased 14 trucks manufactured by defendant Ford Motor Company and which had transmissions manufactured by defendants Clark Equipment Company and Clark Transmissions, from defendant Turnpike Ford Truck Sales, Inc. "in or about November 1976." Plaintiff alleged that the trucks' transmissions had failed on many occasions and that defendants had been unable to cure the defects. Plaintiff claimed damages for (a) repair, towing and replacement-part expenses, (b) lost profits resulting from the termination of lease agreements for the trucks with its customers, and (c) a decrease in the market value of the trucks. The damages were alleged to have directly and proximately resulted *26 from defendants' breach of warranties, both written and implied, and from product defects.
In count two plaintiff alleged defendants had violated the federal Magnuson-Moss Act; plaintiff concedes on this appeal that it has no cause of action under that act.
In count three plaintiff alleged that the trucks had been defectively designed and manufactured while in the possession and control of the defendants and that they had been "negligent, grossly, wantonly and wilfully negligent in the design and manufacture" of the trucks. Alleging that defendants were strictly liable in tort, judgment was sought against each defendant for economic damages, costs, interest and counsel fees. Additionally, punitive and treble damages were claimed under count three.
Turnpike Ford admitted that it sold plaintiff the trucks but denied that it had given plaintiff any written or implied warranties. Among its defenses, Turnpike Ford claimed the four-year statute of limitations barred plaintiff's action and that the damages plaintiff sustained had resulted from conditions over which it had no control.
Ford admitted that it issued written warranties in connection with the manufacture and sale of the type of vehicle plaintiff described in its complaint but claimed that those warranties constituted the extent of Ford's obligation. Among its defenses, Ford alleged that plaintiff failed to state a claim, that it had satisfied all of its obligations to plaintiff under the warranties, and that the claims were barred by the four-year statute of limitations.
Defendant Clark denied the allegations or alleged it had insufficient information to respond. Among its separate defenses Clark asserted that plaintiff was barred from recovery "for lack of compliance with the terms of the express warranty," the action was time-barred, and plaintiff failed to give defendant an opportunity to cure.
*27 The defendants' motions for summary judgment were granted on the ground of the four-year time bar of the Uniform Commercial Code (UCC) N.J.S.A. 12A:2-725. The judge viewed this as "a contract case" and not a case of strict liability in tort or for design negligence. He also dismissed as to Clark for "lack of privity."
Plaintiff, a New Jersey corporation from Elizabeth, sells and leases trucks, operating a fleet of 300 vehicles. The exact date of delivery of the 14 trucks purchased from Ford through Turnpike Ford Trucks was unknown, but plaintiff admits delivery in mid-November 1976. The trucks purchased contained Clark 390V transmissions "specified by the plaintiff because of [its] reliance upon Clark's advertising and brochures."
Plaintiff first experienced trouble with the transmissions in February 1977. The trucks' use was mixed, both city and highway. The majority of the failures were with the third and fourth gears on the countershaft. Plaintiff had leased the trucks to Economics Laboratory, Inc. Due to continual transmission failure, the lease was terminated in 1979 causing "lost profits." Damages for "decrease in market value" of the trucks and costs of repair were also sought.
In opposition to defendants' summary judgment motions plaintiff submitted the certifications of Glasofer, its president, and copies of correspondence between Clark and plaintiff. He described oral and written communications with Clark's representatives concerning the defective transmissions. Clark's representatives had continually assured Glasofer that plaintiff's complaint about the defective transmissions could be resolved amicably, and Clark had provided replacement parts. A December 19, 1977 letter from Glasofer to Clark stated that plaintiff had returned defective parts from a failed transmission to Clark for its analysis. Glasofer reported as of that date plaintiff had sustained two additional failures.
In a January 26, 1978 letter to Clark, Glasofer thanked Clark for its analysis on the transmission failures. He said

*28 As described to me, the failures in these gear boxes was [sic] a result of improper angle degree in the way certain gears were cut. This resulted in additional strain on the actual gear and the mating gear and related shafts. This contributed to the failure of some of your transmissions as early as 24,000 miles.
Glasofer acknowledged that Clark had advised that it could not make direct warranty reimbursement to plaintiff but that plaintiff would need to come to an agreement with Ford.
In an April 27, 1978 letter to Clark, Glasofer advised that plaintiff was experiencing second and third failures with transmissions that had been rebuilt with replacement parts. Although Glasofer had threatened to take action to protect its interest in an April 4, 1978 letter to Clark, Glasofer's April 27 letter simply asked that Clark and Ford perform necessary tests to determine why the failures were continuing and what modifications were necessary to eliminate them.
Finally, in a letter dated July 11, 1978 Glasofer reported that although plaintiff had worked with people from Ford's and Clark's field staff, plaintiff had sustained an average of two failures every month. Glasofer asserted that unless he received a direct response to his complaints and compensation for the costs plaintiff had incurred as a result of the transmission failures, plaintiff would "take whatever action is necessary to hold you financially responsible."
Plaintiff contends that its strict liability and negligent design claims are not barred by the statute of limitations because the six-year statute, N.J.S.A. 2A:14-1, applies, rather than the four-year U.C.C. statute, N.J.S.A. 12A:2-725, and that its claim for consequential economic damages is supported by our Supreme Court's opinions in Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973); Rosenau v. City of New Brunswick and Gamon Meter Co., 51 N.J. 130 (1968) and Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52 (1965).
Clark disputes that plaintiff has a tort claim against it, arguing that the transaction is governed completely by the U.C.C. Further, it contends that plaintiff has no claim sounding *29 in tort because the claim does not involve an injury to a person or damage to property. Moreover, relief is unavailable since plaintiff is not an individual consumer, but a commercial entity. Clark asserts that other jurisdictions have rejected claims based on strict liability in tort or negligence where the plaintiff failed to allege personal injury or damage to property. It argues that to apply tort concepts to allow plaintiff's claim for consequential economic damages "would do no less than vitiate the effectiveness of the Uniform Commercial Code." Clark maintains that no published New Jersey opinion supports plaintiff's extension of the strict tort liability theory to these facts.
Ford argues that plaintiff failed to allege a proper cause of action based on strict liability in tort; that plaintiff merely seeks damages for breach of contract; that if it sufficiently alleged a cause of action, the facts do not warrant application of the strict tort liability doctrine, and plaintiff did not allege a conventional claim for personal injury or property damage. Ford also asserts that because the action is only for breach of contract and consequential damages, the only avenue of relief is under the U.C.C.

I
Plaintiff urges that New Jersey should recognize a cause of action by a commercial buyer for consequential economic damages under the strict liability in tort doctrine.
Initially, we reject Ford's argument that plaintiff failed to adequately allege a cause of action for strict liability in tort. Paragraph four of the complaint's third count specifically asserts that defendants were strictly liable in tort. To be adequate, a pleading must contain a statement of facts on which a claim is based, showing that the pleader is entitled to relief, and a demand for judgment for that relief. R. 4:5-2. Pleadings must fairly apprise the adverse party of the claims and issues to be raised at trial. Jardine Estates v. Koppel, 24 N.J. 536, 542 (1957). On an attack upon a complaint all *30 facts, reasonable inferences and implications are to be considered most strongly in favor of the pleader. Jersey City v. Hague, 18 N.J. 584, 587 (1955).
As Clark correctly points out, the sales article of the Uniform Commercial Code permits a buyer to recover as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages. N.J.S.A. 12A:2-712(2). Consequential damages resulting from a seller's breach include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise" as well as any injury to person or property proximately resulting from a breach of warranty. N.J.S.A. 12A:2-715(2). However, consequential damages may be limited or excluded unless such limitation or exclusion is unconscionable. N.J.S.A. 12A:2-719(3).
Here, plaintiff seeks to recover two types of economic loss: direct and consequential. A direct economic loss encompasses damage based on an insufficient product value, computed as the difference in value between the defective product and the product if properly made; i.e., the loss of the bargain. See "Economic Loss in Products Liability Jurisprudence," 66 Colum. L.Rev. 917, 918 (1966). Consequential economic loss includes all indirect losses, such as a loss of profits resulting from the buyer's inability to make use of the defective product. Ibid. See generally "Manufacturers' Liability to Remote Purchasers for `Economic Loss' Damages  Tort or Contract?," 114 U.Pa.L. Rev. 539 (1966).
New Jersey has long recognized the right to recover lost profits as consequential damages where plaintiff's claim is "based on sound fact and not mere opinion evidence...." See Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 314 (1954). See also Seaman v. U.S. Steel Corp., 166 N.J. Super. 467, 471 (App.Div.), certif. den. 81 N.J. 282 (1979). Although there is some authority to the contrary, *31 the predominant view among the jurisdictions is that the strict liability in tort doctrine is not applicable to claims involving purely commercial losses in the absence of any personal injuries or property damage claim. See generally Frumer & Friedman, Products Liability, § 16A[4][K] (1983); Annotation, "Products liability: strict liability in tort," 13 A.L.R.3d 1057, § 8 at 1091-1092 (1967). The courts apparently take three approaches to the issue. One line of decisions rejects application of the strict tort liability doctrine to purely economic loss. See Morrow v. New Moon Homes, Inc., 548 P.2d 279, 285-286 (Alaska Sup.Ct. 1976); Hiigel v. General Motors Corp., 190 Colo. 57, 544 P.2d 983, 989 (Sup.Ct. 1975); Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 448 (Sup.Ct. 1982); Local Joint Exec. Bd. of Las Vegas v. Stern, 651 P.2d 637, 638 (Nev.Sup.Ct. 1982); Nobility Homes of Texas, Inc. v. Shivers, 557 S.W.2d 77, 80 (Tex.Sup.Ct. 1977). See also Purvis v. Consol. Energy Products, 674 F.2d 217 (4th Cir.1982) (South Carolina law; 2-1 decision) (reh. den. en banc). For a particularly good summary of the authorities see Judge Adams' opinion in Jones & Laughlin Steel Corp. v. Johns-Mansville Sales Corp., 626 F.2d 280, 285-290 (3rd Cir.1980) (Ill. law).
Others reject the claim where it stands alone, but imply that a cause of action may be recognized where it is made in conjunction with a claim for damages for personal injury or property damage. See Sioux City Community Sch. Dist. v. Int'l. Tel. & Tel. Corp., 461 F. Supp. 662, 664-665 (N.D.Ia. 1978); States Steamship Co. v. Stone Manganese Marine, Ltd., 371 F. Supp. 500, 504-505 (D.N.J. 1973) (New Jersey law); McDonough v. Whalen, 1 Mass. App. 573, 304 N.E.2d 199, 201 (Mass.Ct.App. 1973), modified 365 Mass. 506, 313 N.E.2d 435 (Sup.Ct. 1974); Tex. Processed Plastics, Inc. v. Gray Enterprises, Inc., 592 S.W.2d 412, 415 (Tx.Ct.Civ.App. 1979); Thermal Supply of Texas, Inc. v. Asel, 468 S.W.2d 927, 929-930 (Tx.Ct.Civ.App. 1971).
In the minority, a third position is taken by courts recognizing a cause of action for economic loss under a strict liability in tort theory without requiring that the claim be joined with one for *32 personal injury or property damage. See Mead Corp. v. Allendale Mut. Ins. Co., 465 F. Supp. 355, 364-366 (N.D.Ohio 1979); Iacono v. Anderson Concrete Corp., 42 Ohio St. 88, 326 N.E.2d 267 (Sup.Ct. 1975); Berg v. General Motors Corp., 87 Wash.2d 584, 555 P.2d 818, 823 (Sup.Ct. 1976) (negligence claim); see also City of LaCrosse v. Schubert, 72 Wis.2d 38, 240 N.W.2d 124, 127 (Sup.Ct. 1976) (dicta).
Rejecting application of the strict liability in tort doctrine to this type of damage, the Alaska court in Morrow v. New Moon Homes, Inc. commented:
In our view, recognition of a doctrine of strict liability in tort for economic loss would seriously jeopardize the continued viability of these [UCC liability] rights. The economically injured consumer would have a theory of redress not envisioned by our legislature when it enacted the U.C.C., since this strict liability remedy would be completely unrestrained by disclaimer, liability limitation and notice provisions. Further, manufacturers could no longer look to the Uniform Commercial Code provisions to provide a predictable definition of potential liability for direct economic loss. In short, adoption of the doctrine of strict liability for economic loss would be contrary to the legislature's intent when it authorized the aforementioned remedy limitations and risk allocation provisions of Article II of the Code.... Thus, we hold that the theory of strict liability in tort ... does not extend to the consumer who suffers only economic loss because of defective goods.
[548 P.2d at 285-286].
In a recent comprehensive opinion the Illinois supreme court also rejected, as recoverable loss, damages for economic injury under a strict liability in tort theory. Moorman Mfg. Co. v. Nat'l Tank Co., supra. There, plaintiff sought to recover economic losses resulting from a crack in a grain storage tank. 61 Ill.Dec. at 756, 435 N.E.2d at 445. The Illinois court noted that the issue of whether a consumer could recover under a strict liability in tort theory for solely economic losses had been addressed by other courts; the contrasting views are represented by the New Jersey Supreme Court's opinion in Santor, supra, and the California supreme court's opinion in Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145, 151-152 (Sup.Ct. 1965). In rejecting the doctrine's applicability to economic injury, the Illinois supreme court commented

*33 ... [T]he court, in adopting the strict liability in tort theory ... emphasized the unreasonably dangerous nature of the product. [Citation omitted]. The focus upon the unreasonably dangerous condition of the product in cases involving strict liability has been consistently followed by this court. [Citations omitted].... [T]he unreasonable dangerous nature of a product has particular relevance when a personal injury results and to some degree when property damage occurs. It has little relevance to economic loss when neither personal injury nor property damage is involved.
[61 Ill.Dec. 757-58, 435 N.E.2d at 446-447].
The Illinois court noted that the law of sales had been structured to govern the economic relations between suppliers and consumers of goods in Article II of the Code and that Section 2-316 permitted parties to a sales contract to limit warranties in any reasonable manner. Id. 61 Ill.Dec. at 758, 435 N.E.2d at 447. The court felt that limiting the plaintiff to a warranty cause of action prevented a manufacturer from being held liable for damages "of unknown and unlimited scope." Ibid. The court reasoned
... If a defendant were held strictly liable in tort for the commercial loss suffered by a particular purchaser, it would be liable for business losses of other purchasers caused by the failure of the product to meet the specific needs of their business, even though these needs were communicated only to the dealer. [Citations omitted]. Finally, a large purchaser, such as plaintiff in the instant case, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Or it may choose to accept a lower purchase price for the product in lieu of warranty protection.... We believe it is preferable to relegate the consumer to the comprehensive scheme of remedies fashioned by the UCC, rather than requiring the consuming public to pay more for their products so that a manufacturer can insure against the possibility that some of his products will not meet the business needs of some of his customers. [Citations omitted].
[Id. 61 Ill.Dec. at 758-59, 435 N.E.2d at 447-448].
The court concluded that recovery under a strict tort liability claim was limited to recovery for physical injury to the plaintiff's property and to personal injury. Id. 61 Ill.Dec. at 759, 435 N.E.2d at 448. Accord, National Crane Corp. v. Ohio Steel Tube Co., 213 Neb. 782, 332 N.W.2d 39, 44 (Neb.Sup.Ct. 1983) (5-2 decision); Restatement, Torts 2d, § 402A at 347 (1965).
Although the Santor decision is widely cited by other courts as supporting the proposition that economic damages are recoverable under a strict tort liability theory, we read that case as only *34 squarely supporting the conclusion that direct economic damages are recoverable. The question of whether consequential or indirect economic damages are recoverable under the theory has not yet been precisely addressed by an appellate court in this jurisdiction. But see H. Rosenblum, Inc., supra, 93 N.J. 324 at 340.
In Santor, supra, plaintiff sued a carpet manufacturer and its distributor, claiming that the carpeting was defective. As damages, plaintiff sought recovery of its cost. Defendants admitted defective manufacture, and the trial judge awarded judgment for plaintiff against both the manufacturer and the distributor. In our Supreme Court's view there was no reason to distinguish between personal injury recovery under a strict tort liability theory and a recovery for loss of benefit of the bargain through a worthless product. Id. at 60. The court felt that it did not matter whether the defect was one likely to cause the purchaser harm. Ibid. It observed
... It must be said, therefore, that when the manufacturer presents his goods to the public for sale he accompanies them with a representation that they are suitable and safe for the intended use. As the Supreme Court of California said, such representation must be regarded as implicit in their presence on the market. [Citations omitted]. The obligation of the manufacturer thus becomes what in justice it ought to be  an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The purpose of such liability is to insure that the cost of injuries or damage, either to the goods sold or to other property, resulting from defective products, is borne by the makers of the products who put them in the channels of trade, rather than by the injured or damaged persons who ordinarily are powerless to protect themselves. [Citations omitted].
[Id. at 64-65].
Thus,
... If the article is defective, i.e., not reasonably fit for the ordinary purpose for which such articles are sold and used, and the defect arose out of the design or manufacture or while the article was in the control of the manufacturer, and it proximately causes injury or damage to the ultimate purchaser or reasonably expected consumer, liability exists. Existence of the defect means violation of the representation implicit in the presence of the article in the stream of trade that it is suitable for the general purposes for which it is sold and for which such goods are generally appropriate.
[Id. at 66-67].
*35 The court therefore affirmed defendants' liability to plaintiff, but reversed on the question of damages, stating that the proper measure should be the difference between the price plaintiff had paid and the actual market value of the defective carpeting at the time when plaintiff knew or should have known that it was defective. Id. at 68-69.
The California supreme court in Seely v. White Motor Co., supra, 45 Cal. Rptr. at 23, 403 P.2d at 151, rejected Santor. There, plaintiff, a heavy-duty hauler, had purchased a truck manufactured by White Motor. Upon taking possession the hauler found that it bounced violently and continued to do so despite defendant's attempts at correction. When the truck overturned as plaintiff slowed to make a turn, it sustained damage costing $5,466.09 to repair. When defendant repossessed the truck after plaintiff stopped payments, plaintiff brought suit seeking (1) the costs of repairing the truck, (2) the money he had paid for the truck and (3) profits lost when he was unable to make normal use of the truck. The court upheld the trial court's award of damages for lost profits on plaintiff's breach of warranty claim. 45 Cal. Rptr. at 20, 403 P.2d at 148. However, it rejected the contention that liability could also be based under strict liability in tort. Chief Justice Traynor said
... If under these circumstances defendant is strictly liable in tort for the commercial loss suffered by plaintiff, then it would be liable for business losses of other truckers caused by the failure of its trucks to meet the specific needs of their businesses, even though those needs were communicated only to the dealer. Moreover, this liability could not be disclaimed, for one purpose of strict liability in tort is to prevent a manufacturer from defining the scope of his responsibility for harm caused by his products. (Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 63, 27 Cal. Rptr. 697, 377 P.2d 897). The manufacturer would be liable for damages of unknown and unlimited scope. Application of the rules of warranty prevents this result. Defendant is liable only because of its agreement as defined by its continuing practice over eleven months. Without an agreement, defined by practice or otherwise, defendant should not be liable for these commercial losses.
* * * * * * * *
The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. *36 The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.
[45 Cal. Rptr. at 22-23; 403 P.2d at 150-151].
Our Supreme Court has demonstrated that it does not follow precisely the "strict liability" black letter of the Restatement of Torts. In Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 174-177 (1979), the court rejected the "unreasonably dangerous" requirement of Section 402A Restatement, Torts 2d.[1] The plaintiff in Suter, an individual, sued for personal injury damages when his hand was caught in cylinders of an industrial sheet-metal rolling machine. The Court stated that a jury in a strict liability action should be charged "in terms of whether the product was reasonably fit, suitable and safe for its intended or foreseeable purposes when inserted by defendant into the stream of commerce and, if not, whether as a result damage or injury was incurred by the contemplated users or *37 others who might reasonably be expected to come in contact with it." 81 N.J. at 176; see also Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982).
In Rosenau v. City of New Brunswick and Gamon Meter Co., supra, 51 N.J. at 134, plaintiff sued to recover property damage sustained when a water meter installed by the City of New Brunswick and furnished by the Gamon Meter Company broke. The Court noted that the California supreme court in Seely v. White Motor Co., had refused to apply strict liability "as it was sweepingly applied in Santor, to a situation where the plaintiff suffered only economic loss or loss of bargain as distinguished from physical injury to his person or property" and also noted that the Restatement § 402A spoke only in terms of physical harm to the user or to his property. Id. at 141-142. The Court declined to "revisit Santor" because plaintiffs were not asserting a claim for economic loss or loss of bargain. Ibid. Nevertheless, the implication of an application broader than Seely and the Restatement was clear.
In Heavner v. Uniroyal, Inc., supra, 63 N.J. at 133, plaintiff had purchased a truck tire manufactured by Uniroyal from a retailer, a seller of trailers equipped with Uniroyal truck tires. Plaintiff sued for personal injuries sustained, as well as for property damage to the vehicle caused when a tire blew out while he was driving the rig. There the court found that provisions of Article II of the U.C.C. were not intended to apply; in particular, the four-year statute of limitations established by N.J.S.A. 12A:2-725 did not apply to a consumer-user action against a manufacturer for consequential personal injury and property damage. 63 N.J. at 155. It therefore held that the two-year statute of limitations for personal injury actions under N.J.S.A. 2A:14-2 applied to the personal injury claim and the six-year statute, under N.J.S.A. 2A:14-1, to the property damage claim. Id. at 156. The court specifically stated that it did not reach the question of whether N.J.S.A. 12A:2-725 would apply to actions merely for loss of bargain or economic damage in a commercial sense. 63 N.J. at 157 n. 16.
*38 In Realmuto v. Straub Motors, 65 N.J. 336 (1974), the court agreed with the Appellate Division that the trial court had improperly dismissed plaintiffs' complaint since the evidence was sufficient to withstand a motion for judgment. Plaintiff had sued for personal injuries. Plaintiff had been in an accident after the car's accelerator-carburetor mechanism failed. Defendant, a used-automobile dealer, had installed a rebuilt carburetor prior to its sale to plaintiff. The court held that a used car dealer could be subject to strict liability in tort with respect to a mishap resulting from defective work, repairs or replacements made on the used vehicle before sale. Then in Herbstman v. Eastman Kodak Co., 68 N.J. 1 (1975), the Supreme Court reiterated its position that a manufacturer could be held responsible to a consumer purchaser for economic losses, as opposed to personal injury or property damage claims, (1) where the parties so agree, (2) under the U.C.C., and (3) under a strict liability in tort theory. Id. at 7.
Most recently, in H. Rosenblum, Inc. v. Jack F. Adler, supra, 93 N.J. at 340, a case holding public accountants liable to parties, other than their direct clients, for negligent misrepresentation, our Supreme Court stated
These cases demonstrate that negligent misrepresentations referring to products may be the basis of liability irrespective of privity.[5] Damages for products liability have not been limited to physical injury. Recovery for economic loss has also been permitted. [Emphasis supplied.] In Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 60 (1965), Justice Francis observed that
[f]rom the standpoint of principle we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively-made product has caused personal injury, and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it.[6]
Why should a claim of negligent misrepresentation be barred in the absence of privity when no such limit is imposed where the plaintiff's claim also sounds in tort, but is based on liability for defects in products arising out of a negligent misrepresentation? If recovery for defective products may include economic loss, why should such loss not be compensable if caused by negligent misrepresentation? The maker of the product and the person making a written representation with intent that it be relied upon are, respectively, impliedly holding out that the product is reasonably fit, suitable and safe and that the representation *39 is reasonably sufficient, suitable and accurate. The fundamental issue is whether there should be any duty to respond in damages for economic loss owed to a foreseeable user neither in privity with the declarant nor intended by the declarant to be the user of the statement or opinion.
[5] Consistent with its holding in Henningsen [v. Bloomfield Motors, Inc., 32 N.J. 358 (1960)], this Court has permitted an action for failure to warn in a strict products liability case without privity. That failure could constitute the omission to state a material fact that would render the statement as made misleading. Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 243 (1981) (warning to be sufficient must communicate information essential to make the use of a product safe).
[6] A number of jurisdictions have adopted the approach set forth in Santor, but permitting recovery in tort for economic loss in such cases is not as yet the majority rule. See cases cited in Pennsylvania Glass Sand v. Caterpillar Tractor Co., 652 F.2d 1165, 1171 n. 17 (3d Cir.1981) (applying Pennsylvania law). The leading case holding that economic loss is not recoverable is Seely v. White Mountain Co., 63 Cal.2d 9 [45 Cal. Rptr. 17], 403 P.2d 145 (1965).
Plaintiff's position is also supported by Monsanto Co. v. Alden Leeds, Inc., 130 N.J. Super. 245 (Law Div. 1974). There plaintiff sued to recover on a contract for goods sold and delivered to defendants. Defendants counterclaimed, alleging that the dry organic chlorine supplied by plaintiff was defective. Defendants alleged that moisture problems with the chemicals had caused the escape of chlorine gas, causing its container to ignite spontaneously. The defendant claimed property damage and business losses. Although Missouri law applied to the contract claims, New Jersey law applied to the tort claim. The case presented both a commercial claimant and a consequential economic damage claim. After reviewing New Jersey and out-of-state opinions, Judge Dreier commented
Unlike the difficulty faced by the Iowa and other courts, this court has the benefit of a line of New Jersey cases pointing to the expansion of the field of strict liability and, therefore, has no difficulty finding that Santor would be applied by our Supreme Court as encompassing a commercial loss. Even in these days of consumerism, economic interests are not out of favor. Injuries to a man's business can be as detrimental to our society as injuries to his person. Severe injuries to a family's economic life can be devastating. Corporations are, in the last analysis, owned by people who rely upon them for income, and thus commercial losses often are reflected in personal sorrow. Such a conclusion places the liability where it belongs, with the manufacturer, distributor or *40 retailer, who can in turn, through insurance, spread the cost of injuries due to defective products throughout those further along the distribution system.
In the last analysis, however, the extent to which the strict liability in tort doctrine will be applied to a commercial loss is up to the parties, for, as will be noted hereafter, the parties still have bargaining positions from which they may allocate the loss, providing such allocation is not unconscionable. Absent his explicit agreement, a single injured party, whether it be a corporation or individual, processor-purchaser or eventual user, businessman or household user, should not be required to absorb the cost of the occasional loss, either by payment for insurance or absorbing the damages. Defective products for the commercial market should also give rise to liability to be borne by the enterprise which created the item or placed it in the stream of commerce, unless there is a valid allocation of the risk of loss between the contracting parties. [Id. at 259-260].
The seller's motion for summary judgment was denied.
Plaintiff also relies on ICI Australia Ltd. v. Elliott Overseas Co., 551 F. Supp. 265 (D.N.J. 1982). There, on facts not unlike those pleaded by this plaintiff, Spring Motors, ICI sued under strict tort liability, negligence and express and implied warranty theories when defendant supplied defective coupling as part of a feedgas train. Extensive damage was caused to the train's other components when the coupling failed, causing the shutdown of plaintiff's machine and plant for approximately two weeks. After reviewing Santor, Heavner, and Monsanto, the court held that strict liability actions were available to commercial purchasers in New Jersey. Id. at 268. Although the court incorrectly applied the "unreasonably dangerous" criterion of the Restatement 2d, § 402A, it correctly held that the New Jersey general statute of limitations was applicable to plaintiff's strict liability claim and defendants' motion for summary judgment was denied. Other federal cases applying New Jersey law to permit recovery of economic loss include Cinnamison Tp. Bd. of Educ. v. U.S. Gypsum Co., 552 F. Supp. 855, 857-858 (D.N.J. 1982) and States Steamship Co., supra, 371 F. Supp. at 504.
Although it is possible that our Supreme Court, on consideration of this issue, might limit the application of the strict tort liability theory to certain commercial buyers or to situations where inequality exists in a bargaining position, we conclude on *41 the present posture of the law that it would extend application of the doctrine to commercial buyers who suffer economic loss, at least absent a clearly expressed and fairly bargained waiver. The Court has consistently emphasized that the basis for the doctrine and the reason for holding the manufacturer liable to purchasers who are not in privity is simply that a manufacturer should be accountable for damages resulting from placing a product which is defective in the stream of commerce. See Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 169.
Although a commercial buyer may be better able to protect itself by obtaining a warranty holding the seller accountable where the goods fail to perform as expected, we do not think that simply by being in business a buyer is able to obtain from a seller all the protections reasonably needed. This is particularly true where the seller is an automobile manufacturer, an industry where standard warranties are issued and the dealer is interposed but basically is an agent of the manufacturer. We therefore conclude that this commercial buyer may sue under the strict liability in tort theory.
We also conclude that a plaintiff may recover consequential economic damages. As noted, lost profits traditionally have been awarded in this state on a proper showing. Since the Supreme Court has indicated that it is willing to award direct economic damages under the strict tort liability theory, we think the doctrinal extension to this type of damage claim is the next logical step in the law's development in this jurisdiction. We see no basis for limiting recovery of these damages to an action where the plaintiff has sustained either property damage or personal injury since Santor clearly does not make that a prerequisite to a direct economic loss claim.

II
N.J.S.A. 12A:2-725(1) requires that actions for breach of contract for sale be commenced within four years after the *42 cause of action has accrued. The parties may by agreement reduce the period of limitations but may not extend it. A cause of action is deemed to accrue "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made." N.J.S.A. 12A:2-725(2).
N.J.S.A. 2A:14-1 establishes a six-year statute of limitations for actions brought for "any tortious injury to real or personal property ... [and] for any tortious injury to the rights of another not stated in Sections 2A:14-2 and 2A:14-3 of this title." N.J.S.A. 2A:14-1 also applies to claims brought for recovery upon contractual claims or liability, express or implied. Specifically excepted from application of the statute is any action for breach of contract for sale governed by N.J.S.A. 12A:2-725. N.J.S.A. 2A:14-2 requires that actions for injury to the person "caused by the wrongful act, neglect or default of any person" be commenced within two years after the cause of action accrues.
Under Section 14-1 and Section 14-2 a cause of action accrues when an injured party discovers, or by the exercise of reasonable diligence should have discovered, a basis for an actionable claim. Lynch v. Rubacky, 85 N.J. 65, 69-70 (1981); Lopez v. Swyer, 62 N.J. 267, 272, 274 (1973). The injured party must have an awareness of material facts relating to the existence and origin of the injury. Lynch v. Rubacky, supra, 85 N.J. at 73; Burd v. New Jersey Telephone Co., 76 N.J. 284, 291-293 (1978).
In Heavner v. Uniroyal, Inc., supra, 63 N.J. at 130, plaintiffs brought their actions more than three years after the accident but less than four years from the delivery of the Uniroyal tire by the dealer to plaintiff. Although the Court held that it would, as a matter of policy, adopt the North Carolina statute of limitations which would have barred plaintiffs' suit, it chose also to decide the case under the New Jersey statute. Id. at 134. Since the Court viewed the Uniform Commercial Code as having *43 been drawn with the contract between a seller and immediate buyer in mind, it held that N.J.S.A. 12A:2-725 did not apply to a consumer-user action against a manufacturer for consequential personal injury and property damage claims under a strict tort liability theory. 63 N.J. at 150, 154-155. The Court concluded
To return to the specific question before us  the statute of limitations provisions, N.J.S.A. 12A:2-725  it is obvious, especially in the light of the prior discussion of the intended scope of the sales chapter, that by its very language  "[a]n action for breach of any contract for sale"  and apart from New Jersey statutory and decisional history, that it cannot apply to a consumer-user action against a manufacturer for consequential personal injury and property damage. To put it conversely, it could at best only have application where the suit involves two directly contracting parties or where the plaintiff is within the limited third-party beneficiary category permitted by the Code. This conclusion is borne out by the Official Comment to the Section clearly indicating its conventional commercial orientation....
[63 N.J. at 155-156].
The court held that plaintiff's action against Uniroyal was governed by the general statutes of limitations; i.e., two years for personal injury claims and six years for property damage, both terms to be computed from the date of the accident. Thus, had New Jersey limitations law been applicable, dismissal of the personal injury and per quod counts would have been correct. Id. at 156. The court further held that N.J.S.A. 12A:2-725 did not apply to strict liability in tort actions for consequential personal injury and property damage claims against the ultimate seller or supplier, but that such actions were governed, like those against a manufacturer, by the general statutes of limitations. Id. at 157. However, the court expressly did not reach the question of whether N.J.S.A. 12A:2-725 would apply to actions brought merely for loss-of-the-bargain or economic damage "in the commercial sense." Id. at n. 16.
Since a strict liability claim rests not on any contractual basis but upon a breach of duty owed generally to the consumers of a product, Rosenau v. City of New Brunswick and Gamon Meter Co., supra, 51 N.J. at 143-144, and considering the Supreme Court's opinion in Heavner, we conclude that N.J.S.A. *44 12A:2-725 does not apply and that the six-year limitation period provided by N.J.S.A. 2A:14-1 for property damages applies. Since plaintiff filed its claim within six years of its first experience with the transmission failures we find its action to be timely.

III
Plaintiff argues that the trial court erred in dismissing its warranty claim against Ford Motor Company as barred by the statute of limitations because the warranty was one of future performance. Thus, plaintiff contends that under N.J.S.A. 12A:2-725(2)[2], its cause of action did not accrue until February 1977, when the defects were discovered.
Ford responds that dismissal was proper because (1) the language in Ford's maintenance manual does not constitute an express warranty and (2) even if it is a warranty, it is not a warranty for future performance. Ford states that its customers are given a separate warranty booklet explaining all the warranties that Ford extends and asserts that the maintenance manual merely outlines the purchaser's obligation to maintain the vehicle. Ford asserts that if the statement is construed as an express warranty it is only conditional and did not guarantee the future performance of the truck for any stated time. Ford's express warranty liability was limited to repair and replacement of parts, it contends. Therefore, its warranty was breached, if at all, at the time the trucks were delivered to plaintiff in November 1976. Since plaintiff brought the action more than four years later, the claim is time-barred.
*45 The warranty booklet issued by Ford stated that it warranted its 1977 medium and heavier trucks from their first use or retail delivery. It stated that the seller-dealer would repair or replace parts found to be defective in material or workmanship under normal use. Ford expressly limited its warranty to repair or replacement of parts and the warranty was in lieu of any express or implied warranties, including merchantability or fitness.
Plaintiff relies on the following language contained in the maintenance manual

GENERAL WARRANTY AND MAINTENANCE
For your convenience, your vehicle has been designed to give long, reliable service with the simplest and least costly maintenance requirements possible.
The section of the manual headed "General Warranty and Maintenance" continues
You play an important part in maintenance. Only you can make sure that your vehicle regularly receives the care it needs. And since we have eliminated or extended the intervals on so many of the minor items of maintenance, you can be sure that it is essential that the remaining items be performed at the intervals recommended in the maintenance schedules.
The booklet continues to explain warranties relating to the emission system and contains certain recommendations relating to maintaining the vehicle. The booklet then adds
Neither Ford nor any of its dealers assumes any responsibility under this warranty for loss of use of the vehicle, loss of time, inconvenience, commercial loss, or consequential damages.
To the extent permitted by law, THIS WARRANTY IS EXPRESSLY IN LIEU of any other express or implied warranty condition or guarantee agreement or representation by any person with respect to the emissions systems or any part thereof, including ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS.
The Law Division judge found that the sentence relied upon by plaintiff did not constitute a warranty of future performance and granted Ford summary judgment on the basis of the statute of limitations. N.J.S.A. 12A:2-725(2) provides that where a warranty "explicitly" extends to future performance of the goods any cause of action for breach accrues when the breach is or should have been discovered.
*46 The first inquiry is whether an express warranty was created by the seller Ford by
(a) Any affirmation of fact or promises made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain....
(b) Any description of the goods which is made part of the basis of the bargain....
[N.J.S.A. 12A:2-313(1)].
The seller need not use the formal words such as "warrant" or "guarantee" or have the specific intention to make a warranty in order that an express warranty arise; any affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion does not create a warranty. N.J.S.A. 12A:2-313(2). See generally Annotation: "What constitutes `Affirmation of fact' giving rise to express warranty under UCC § 2-313(1)(a)," 94 A.L.R.2d 729 (1979).
It is said that a statement that equipment is ready to use and is in good shape constitutes an express warranty, as does a statement that farming equipment is in good repair and ready to go into the field. 1 Anderson, Uniform Commercial Code (2 ed. 1970), § 2-313:37 at 502. Similarly, a warranty that a machine is "well constructed," "satisfactory," or "in good working order" will ordinarily bind the seller. Ibid. See Collins v. Uniroyal, 64 N.J. 260, 262-263 (1974).
We find that Ford expressly warranted that the vehicle purchased was designed to give long and reliable service and that maintenance would be simple and not unduly expensive. Ford said in writing under the caption "General Warranty" that the truck was designed to give long and reliable service and to have simple and "least costly" maintenance requirements. The implication is clear to the reader that with reasonable maintenance Ford has designed a vehicle "to give long, reliable service." See Id. at 263.
Thus, two issues are raised: (1) whether this warranty is one of future performance so that plaintiff's cause of action did not arise until it discovered the defects, and (2) whether Ford's disclaimer effectively limited its warranties to repair and replacement *47 of parts. Obviously, if we conclude that no warranty of future performance was created, the disclaimer issue need not be considered.
Setting aside whether plaintiff may raise the breach of express warranty claim against Ford Motor Company, considering the fact that its direct seller was Turnpike Ford, we conclude that the sentence contained in the maintenance manual did not constitute a warranty of future performance triggering the delayed accrual provision of N.J.S.A. 12A:2-725(2). This court has recently stated
The key requirement in finding a warranty of future performance is that it makes specific reference to a future time  here, a period of at least one year. This type of warranty cannot be characterized as a mere representation of the product's condition at a time of delivery rather than its performance at a future time.
[Fire Dist. No. 9, etc. v. American La France, 176 N.J. Super. 566, 573 (App.Div. 1980)].
See cases collected in Annotation: "What constitutes warranty explicitly extending to `future performance' for purposes of UCC § 2-725(2)," 93 A.L.R.3d 690, 700 (1979) and 2 Anderson, Uniform Commercial Code (2 ed. 1971), § 7-725:24 at 206-208 of 1982 supplement.
Clearly, the words "your vehicle has been designed to give long reliable service with the simplest and least costly maintenance requirements possible" do not make any explicit guarantee as to the vehicle's performance over or after a stated period of time. Compare Homart Dev. Co. v. Graybar Electric Co., 63 App.Div.2d 727, 405 N.Y.S.2d 310, 310 (App.Div. 1978) (statement that a cable had been "designed to give long and reliable service" was not a warranty of future performance); Mittasch v. Seal Lock Burial Vault, Inc., 42 App.Div.2d 573, 344 N.Y.S.2d 101, 103 (App.Div. 1973) (warranty that burial vault would give "satisfactory service at all times" explicitly extended to future performance). We find that these words did not create a warranty of future performance. We therefore find it unnecessary to discuss the adequacy of the disclaimer.
*48 In conclusion, we reject plaintiff's claim that summary judgment should not have been granted against Clark on the warranty claims. Plaintiff points to no language which could be construed as a warranty of future performance and which could have extended the accrual of a cause of action. See Herbstman v. Eastman Kodak Co., 68 N.J. at 11.
The judgment of the Law Division granting summary judgment against the plaintiff on its tort claims is reversed; the judgment of the Law Division granting summary judgment against the plaintiff on its warranty claims is affirmed.
Affirmed in part, reversed in part, and remanded for trial on the tort claims without retention of jurisdiction.
NOTES
[1] Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to its property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to its property, if
(a) the seller is engaged in the business of selling such a product and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) the rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
[2] N.J.S.A. 12A:2-275(2) states

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.