221 N.J. Super. 547 (1987)
535 A.2d 512
SOLOMON RIEDER, PLAINTIFF-APPELLANT,
v.
THE STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PLAINSBORO, A MUNICIPAL CORPORATION, THE PLANNING BOARD OF THE TOWNSHIP OF PLAINSBORO, ERNEST MOSLEY, HENRY SCHAEFER, ARTHUR LEHRHAUPT, JONAS BINGEMAN, BARBARA WRIGHT, CLIFFORD LUTHER, WILLIAM HAY, BOBBIE SCHOTT, JUNE SNOOK, THOMAS SHUSTER, AND DELORES CORONA, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 1987.
Decided December 10, 1987.
*548 Before Judges DREIER and BAIME.
Klein, Chapman, Greenburg, Henkoff & Siegel, attorneys for appellant (Herbert C. Klein of counsel; Michael A. Saffer on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Deputy Attorney General, of counsel; Paul A. Leodori, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*549 This is an appeal from an order of the Superior Court, Law Division, dismissing plaintiff's complaint against defendant New Jersey Department of Transportation (DOT) for failure to state a claim upon which relief can be granted. R. 4:6-2(e). Our thorough reading of the record convinces us that the factual allegations contained in the complaint, viewed liberally and considered in a light most favorable to plaintiff, are legally insufficient and do not state a cause of action. We thus affirm.
The salient facts are not in dispute and are essentially a matter of public record. Plaintiff Solomon Rieder instituted this action by filing a complaint in lieu of prerogative writ against the Plainsboro Township Committee, the Planning Board and its individual members, and the State of New Jersey by the DOT. Although separate claims were advanced against the different public entities and individuals, the principal thrust of plaintiff's varying assertions was that the defendants had unlawfully precluded him from developing and using his property. As set forth in the first count of the complaint, plaintiff's action against the Planning Board was grounded in the contention that it had arbitrarily and capriciously rejected his plan for the "cluster residential development" of his property. Plaintiff asserted that the Planning Board had incorrectly characterized his proposal as "incomplete" and had abused its discretion by denying his application for approval of the plan. In the second count, plaintiff contended that the land use ordinance enacted by the Township Committee was unlawful because it delegated authority to the Planning Board without establishing appropriate standards. Because the third count is the subject of this appeal and requires some elucidation, we briefly skip to the fourth count, which alleged that individual members of the Planning Board had acted in bad faith when they voted to deny approval to plaintiff's development plan.
All of these counts were dismissed by way of motions for summary judgment. Although the truncated record submitted *550 to us is largely uninformative, it appears that plaintiff's action against the Township Committee, the Planning Board, and its individual members was not filed in a timely manner and the summary judgments were granted on that basis. In any event, no appeal has been taken from those orders and we have no occasion to determine whether or not they were correctly entered.
As we have noted, the third count of the complaint is the subject of this appeal. Although inartfully pleaded, plaintiff's claim against the DOT, as therein set forth, is predicated on the theory of inverse condemnation. It was alleged in count three that in August 1973 the DOT determined that a portion of plaintiff's property was needed for the construction of State Highway 92. Plaintiff contended that, based upon that determination, the DOT, the Township Committee and the Planning Board had "directed [him] not to develop or use the [h]ighway tract." Plaintiff alleged that, despite these directives, "no formal declaration of taking ha[d] been filed by the DOT," and he thus was "deprived of the total use and enjoyment of his property."
Viewing the complaint in its entirety, we discern the following facts. On December 4, 1969, the DOT filed an alignment preservation map, which indicated various tracts of land through which the State was contemplating the construction of Route 92. During the early 1970's, plaintiff purchased property which was covered by the alignment preservation map. Sometime in August of 1973, plaintiff submitted an application to the Plainsboro Planning Board, seeking approval of a cluster residential plan for the entire tract. According to plaintiff, he was then advised by the Planning Board that part of the property was included in the alignment preservation map. Plaintiff thereafter submitted an amended plan which excluded the portion of the land which he believed would be subsequently condemned by the DOT. A resolution was adopted by the Planning Board, recommending approval of the amended plan. *551 By resolution, the Township Committee adopted this recommendation and granted approval on September 10, 1973.
The matter remained dormant until 1983. On December 1, 1983, plaintiff submitted an application to the Planning Board for approval of a cluster residential development plan on the remainder of his property which, as we have noted, was covered by the alignment preservation map. In correspondence dated December 27, 1983, the Planning Board notified plaintiff that his application was incomplete and requested additional specified information. On March 8, 1984, plaintiff resubmitted his application and provided the Planning Board with the requested data. However, on July 16, 1984, the Planning Board adopted a resolution, rejecting plaintiff's application on the basis that it remained incomplete. It is to be noted that the resolution did not set forth in what particulars the application was lacking. Rather, the Board merely recited its finding, in conclusory fashion, that the application was incomplete.
Despite the time requirements of R. 4:69-6(b)(3), plaintiff took no action challenging the determination of the Township Committee and the Planning Board until January 23, 1986, when the complaint, which we have described at length, was filed. Following entry of the summary judgments in favor of the other defendants, the DOT, pursuant to R. 4:6-2(e), moved for dismissal of the complaint for failure to state a claim upon which relief can be granted. The trial judge rendered an oral opinion in which she determined that no factual issues existed and that plaintiff's complaint was legally deficient because the mere filing of the alignment preservation map by the DOT did not amount to a taking of property. An order dismissing the complaint was accordingly entered and this appeal followed.

I.
Preliminarily, we observe that plaintiff in his brief has incorrectly framed the issue presented in terms of whether "summary judgment" was properly granted in favor of the *552 DOT. This erroneous characterization of the trial judge's action is compounded by the placement of plaintiff's certification in the appendix to his brief. We emphasize that this certification was not submitted to the trial judge in response to the DOT's motion to dismiss the complaint. In point of fact, nothing outside of the pleadings was presented by either party and, thus, the DOT's motion was not treated as one for summary judgment. See R. 4:6-2. See also Enourato v. N.J. Building Auth., 182 N.J. Super. 58, 64-65 (App.Div. 1981), aff'd 90 N.J. 396 (1982).
On a motion made pursuant to R. 4:6-2(e) "the inquiry is confined to a consideration of the legal sufficiency of the alleged facts apparent on the face of the challenged claim." P. & J. Auto Body v. Miller, 72 N.J. Super. 207, 211 (App.Div. 1962). The court may not consider anything other than whether the complaint states a cognizable cause of action. Ibid. For this purpose, "all facts alleged in the complaint and legitimate inferences drawn therefrom are deemed admitted." Smith v. City of Newark, 136 N.J. Super. 107, 112 (App.Div. 1975). See also Heavner v. Uniroyal, Inc., 63 N.J. 130, 133 (1973); Polk v. Schwartz, 166 N.J. Super. 292, 299 (App.Div. 1979). A complaint should not be dismissed under this rule where a cause of action is suggested by the facts and a theory of actionability may be articulated by way of amendment. Muniz v. United Hsps. Med. Ctr. Pres. Hsp., 153 N.J. Super. 79, 82-83 (App.Div. 1977). However, a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted.

II.
Measured against these standards, we are convinced that plaintiff's complaint failed to state a claim and was properly dismissed by the trial judge. As noted previously, plaintiff's action against the DOT is grounded upon the premise that beneficial use of his property was substantially impaired by the *553 action of the State. He asserts that the filing of the alignment preservation map and the DOT's subsequent long-standing indecision in determining whether to condemn prevented him from developing his property and constituted a constructive taking in contravention of the Fifth and Fourteenth Amendments. See Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 244, 17 S.Ct. 581, 586, 41 L.Ed. 979, 986 (1897). Although our Constitution contains a similar prohibition against the taking of "[p]rivate property ... for public use without just compensation," N.J. Const., Art. I, § 20 (1947), no claim is made here that this provision is more inclusive than its federal counterpart. See State v. Alston, 88 N.J. 211, 225 (1981); Brennan, "State Constitutions and the Protection of Individual Rights," 90 Harv.L.Rev. 489, 491 (1977). We thus proceed under the assumption that the protection accorded by the federal and state constitutions is coextensive.
We commence our analysis with the now well-settled principle that there can be a taking of property for Fifth and Fourteenth Amendment purposes absent a physical invasion or a direct restraint upon its use. Washington Market Enterprises v. Trenton, 68 N.J. 107, 116 (1975). We acknowledge that, in a constitutional sense, land use restraints can amount to a taking of property. United States v. Clarke, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980). In that respect, it has been said that inverse condemnation and eminent domain suits are "opposite sides of the same legal coin." 2 Nichols, Eminent Domain (Sackman ed. 1985), § 6.21(1) at 6-137. Inverse condemnation is a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." United States v. Clarke, supra, 445 U.S. at 257, 100 S.Ct. at 1130, 63 L.Ed.2d at 377. It is a remedy afforded to a landowner whose property has been taken de facto. In re Jersey Central Power and Light Company, 166 N.J. Super. 540, 544 (App.Div. 1979).
*554 We would be remiss were we to fail to note that there appears a certain degree of decisional disarray in treatment of the doctrine and that its exact contours are not yet visible. As aptly observed by our Supreme Court in Washington Market Enterprises v. Trenton, supra, the rules that have evolved over the years "are sometimes harsh and seemingly inconsistent...." Id. 68 N.J. at 117. It must be borne in mind that commonly resolution of constitutional questions concerning inverse condemnation represents no more than a value judgment upon a given factual complex rather than an evident application of a precise rule of law. Cf. State v. Funicello, 60 N.J. 60, 72-73 (1972) (Weintraub, C.J., concurring), cert. den. 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). Such judicial responses inevitably reflect, at least to some degree, the seasoning and experience of the one who judges. Ibid.
Given the somewhat checkered history of the doctrine, we nevertheless can identify three factors that have generally been considered. They are (1) the intensity of governmental regulation, see, e.g., Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984); Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Washington Market Enterprises v. Trenton, supra, (2) the nature and extent of the impairment upon the landowner's beneficial use of the property, see, e.g., Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), reh'g den. 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16 (1962); United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); Bd. of Ed. of Morristown v. Palmer, 88 N.J. Super. 378 (App.Div. 1965), rev'd 46 N.J. 522 (1966), and (3) the time period within which the owner is so deprived, see, e.g., Schiavone Const. Co. v. Hackensack, 98 N.J. 258 (1985); Lomarch Corp. v. Mayor of Englewood, 51 N.J. 108 (1968); Freeman v. Paterson Redevelop. Agency, 128 N.J. Super. 448 (Law Div. 1974), rev'd 138 N.J. Super. 539 (App.Div. 1976).
Considering these factors, we find nothing in the statutory scheme pertaining to the recordation of alignment preservation *555 maps or in the manner in which it was applied here by the DOT that would support application of the inverse condemnation remedy. A brief description of the applicable statutory provisions is necessary for a full understanding of the issues presented. N.J.S.A. 27:7-66 authorizes the DOT to file a map with county and local agencies "[w]henever the location of a proposed line of any new State highway shall have been approved by the Commissioner...." Upon the filing of a map, local authorities are statutorily required to refer various forms of land use applications involving covered properties to the DOT for its review and recommendation. N.J.S.A. 27:7-67(a)(1). Within 45 days of receipt of this notice, the DOT must apprise the municipal approving authority of its probable intention to acquire the property, if that is the case, and thereupon no further action can be taken on the land use application for a period of 120 days. Ibid. If, within the period of 120 days, the DOT has not instituted condemnation proceedings or has not either acquired or agreed to acquire the property, "the municipal approving authority [is] free to act upon the pending application... as may be provided by law." Ibid. The net effect of the statutory scheme is thus to potentially freeze development of covered properties for a period of 165 days.
Against that statutory backdrop, it is abundantly plain that the mere filing of the alignment preservation map did not, by itself, constitute intense governmental regulation, nor did it deprive plaintiff of his right to derive a beneficial use from his property. As we said in Kingston East Realty Co. v. State of N.J., 133 N.J. Super. 234 (App.Div. 1975), "[t]he mere plotting and planning in anticipation of [possible] condemnation without any actual physical appropriation or interference" cannot be said to constitute a taking of property. Id. at 239. See also Far-Gold Constr. Co. v. Chatham, 141 N.J. Super. 164, 169 (App.Div. 1976). The object of the filing is to accord fair "notice to all persons of the system of highways proposed to be established by subsequent proceedings of condemnation." Bauman v. Ross, 167 U.S. 548, 597, 17 S.Ct. 966, 985, 42 L.Ed. *556 270, 291 (1897). The filing itself "does not restrict in any way the use or improvement of lands by their owners before the commencement of proceedings for condemnation ..., nor does it limit the damages to be awarded [in the event of] such proceedings." Ibid. We thus perceive nothing in plaintiff's complaint which might support the thesis that the filing of the alignment preservation map constituted such intense governmental regulation of his property as to qualify as a taking.
Nor did the filing constitute a taking merely because it may result in some impairment in the marketability of the plaintiff's property. The United States Supreme Court has recently stated in that respect that "[a]t least in the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment." Kirby Forest Indus., Inc. v. United States, supra, 467 U.S. at 15, 104 S.Ct. at 2197, 81 L.Ed.2d at 14. "[I]mpairment of the market value of real property incident to otherwise legitimate government action does not result in a taking." Ibid. To that extent, "destruction of the beneficial use of a piece of property [cannot be equated] with a substantial impairment in the `salability' of that property." Schnack v. State, 160 N.J. Super. 343, 348 (App.Div. 1978), certif. den. 78 N.J. 401 (1978). Hence, "a mere proposed taking ... does not warrant compensation" merely because it may cause potential buyers "to shy away from purchasing [the] property." Id. at 350.
The opinion of our Supreme Court in Washington Market Enterprises v. Trenton, supra, does not derogate against this conclusion. There, the owner of a commercial building claimed that a declaration of blight in a downtown area wherein his building was located totally precluded him from attracting tenants and thereby destroyed the value of his property. Ultimately, the building was sold to meet taxes, because the owner was unable to maintain the cost of upkeep. The Court held that "the threat of condemnation ... had such a substantial *557 effect as to destroy the beneficial use that [the] landowner [had] made of his property" and thus there had been a de facto taking requiring compensation. Id. 68 N.J. at 122.
By contrast, nothing in the complaint suggests that the action of the DOT deprived plaintiff of the beneficial use of his property. The filing of the alignment preservation map left plaintiff free to reasonably develop his land, albeit perhaps with some diminution in its market value, which we do not regard as compensable.
Finally, we emphasize that at no time did the DOT prevent plaintiff from developing his property. To that extent, the action of the Planning Board and that of the DOT must be distinguished. As we took pains to stress in our recital of the facts, it was the Planning Board, and not the DOT, that twice rejected plaintiff's plan for a residential cluster development. Plaintiff could have sought judicial review of the Planning Board's determination. At any time, he could have invoked the statutory protection accorded by N.J.S.A. 27:7-67(a)(1), thereby forcing the DOT to announce whether or not it intended to condemn or otherwise acquire his property. Under the statutory scheme, the DOT would have been required to act affirmatively and promptly  by making a decision within 45 days and then, if need be, taking specific action within 120 days  in order to conclude the question whether his land was to be acquired for transportation purposes. Had plaintiff taken this course, at the very worst, development of his property would have been frozen for a period of 165 days. Such a restraint would clearly have been de minimis. See Schiavone Const. Co. v. Hackensack, supra, 98 N.J. at 264.
Instead, plaintiff took no timely action to free his property from the cloud of potential condemnation. So viewed, it was plaintiff's dilatory conduct, his own inattention to his legal rights, that prevented him from obtaining the approval of the Planning Board. Under these circumstances, we discern no compensable taking.
*558 Accordingly, the order of the Law Division dismissing plaintiff's complaint is affirmed.