**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0499-18
                  A-1292-18
                  A-1743-18

BONNIE KMINEK,

     Plaintiff-Appellant,

v.

KENNETH A. NIERENBERG,
STEVEN NIERENBERG, THE
RICHARD NIERENBERG AND
NAOMI NIERENBERG
IRREVOCABLE TRUST,
ABC TRUST, and THE 2012
NIERENBERG FAMILY TRUST[1],

     Defendants-Respondents,

and

DENISE YULIANO and PRIDE
CONSTRUCTION, LLC,

     Defendants.

_____

---

[1] Erroneously pled as the 2012 Trust

BONNIE KMINEK-NIERENBERG,

     Plaintiff-Appellant,

v.

KENNETH NIERENBERG,
RICHARD NIERENBERG, NAOMI
NIERENBERG, PRINCETON AERO
CORPORATION, PRINCETON AIR
CORPORATION, RARITAN VALLEY
FLYING SCHOOL, DKN AND
ASSOCIATES, and PACIFIC AIR
CRAFT CORP.,

     Defendants-Respondents.

_____

BONNIE KMINEK (f/k/a
NIERENBERG),

     Plaintiff-Appellant,

v.

KENNETH NIERENBERG, ESTATE
OF RICHARD NIERENBERG, NAOMI
NIERENBERG, PRINCETON AERO
CORP., PRINCETON AIR
CORPORATION, RARITAN
VALLEY FLYING SCHOOL, and
DKN ASSOCIATES,

     Defendants-Respondents.

_____

Argued December 2, 2020 – Decided March 19, 2021

A-0499-18

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division and Chancery Division, Family Part, Somerset County, Docket Nos. L-0451-18 and FM-18-0711-05.

Louise M. Robichaud argued the cause for appellant.

Ross A. Lewin argued the cause for respondents (Drinker Biddle & Reath LLP, attorneys; Ross A. Lewin, on the brief).

PER CURIAM

In 2005, plaintiff Bonnie Kminek, formerly known as Nierenberg, filed for divorce. In the intervening years, she added defendant Kenneth Nierenberg's parents, Richard[2] and Naomi Nierenberg, a cousin, Steven, and five family-owned companies, as defendants. In sum, she alleged that to a greater or lesser extent, defendant and his family defrauded her of assets rightly hers, which should have been included in equitable distribution. After a thirty-day trial, the Family Part judge authored a comprehensive 259-page opinion in the divorce case dated June 25, 2013. In an unpublished opinion, we affirmed the decision with one exception—as to which we ordered a remand. Nierenberg v. Nierenberg, No. A-5955-12 (App. Div. Sep. 8, 2016).

---

[2] Richard is since deceased. We refer to him by his first name in order to avoid confusion.

A-0499-18

The purpose of the remand hearing was to allocate the percentage of ownership in one asset—a bank account (the A-20 account)—between Richard and Princeton Air. Id. at 17. Additionally, the trial court was to address plaintiff's new claim of judicial bias and request for the judge's recusal. Id. at 7-18.[3]

Docket No. A-1292-18 is plaintiff's appeal of the judge's decision after the remand. Because the judge allocated a minimal percentage of the A-20 account funds to Princeton Air, he found plaintiff was owed only an additional $9672.03. He further granted her $59,672.03 in attorney's fees.

Plaintiff's appeal under Docket No. A-1743-18 relates to the trial court's refusal to allow plaintiff to reopen equitable distribution. She had recently discovered a $382,000 mortgage in the name of defendant and his father as mortgagees, taken back on behalf of a longtime Princeton Air employee as mortgagor.

Finally, Docket No. A-0499-18 challenges the dismissal with prejudice of her complaint against defendants filed in the Law Division, pursuant to Rule

---

[3] Also to be resolved by the Family Part judge was plaintiff's request for counsel fees for the appeal.

A-0499-18

4:6-2(e) (failure to state a claim). Plaintiff was not afforded the opportunity to amend her complaint.

We affirm the Family Part judge's October 15, 2018 order on remand for the reasons he expressed in his thorough and thoughtful opinion. We also affirm a different judge's November 26, 2018 decision refusing to reopen equitable distribution. We reverse and remand the dismissal of plaintiff's Law Division complaint, as she should have been afforded the opportunity to amend her pleadings.

For the reader's convenience, we address plaintiff's points of error, and our conclusions regarding those claims, separately under each docket number. With the exception of the remand regarding the Law Division complaint, we only briefly set forth the reasons we affirm, and only as to some issues. We rely on the judges' analysis, as it is more than sufficiently supported by credible evidence in the record and clear precedent.

Plaintiff argues the following on appeal:[4]

---

[4] Plaintiff combined her point headings for the three appeals.

A-0499-18

POINT I
THE APPEARANCE OF UNFAIRNESS ARISING
FROM YET A THIRD TRANSACTION INVOLVING
THE NIERENBERGS AND [THE JUDGE] AND HIS
FORMER LAW FIRM REQUIRES A REMAND AND
REDETERMINATION OF THE A-20 ACCOUNT
AND ATTORNEY FEE MOTION TO BE HEARD BY
A DIFFERENT JUDGE.

A.    THE UNDISCLOSED THIRD TRANSACTION
      INVOLVING THE NIERENBERGS AND [THE
      JUDGE] AND HIS FORMER LAW FIRM.

B.    THE APPEARANCE OF UNFAIRNESS.

POINT II
THE COURT ERRED IN DENYING BONNIE'S
MOTION TO COMPEL DISCOVERY, TO
OVERRULE OBJECTIONS INTERPOSED BY
KENNETH AT HIS DEPOSITION, TO APPOINT A
DISCOVERY MASTER, AND TO ENGAGE A REAL
ESTATE APPRAISER.

A.    SPOLIATION OF BANK RECORDS.

B.    KENNETH'S DEPOSITION OBJECTIONS.

C.    APPOINTMENT OF A DISCOVERY MASTER.

D.    APPRAISAL OF THE PHILADELPHIA
      PROPERTIES.

POINT III
THE TRIAL COURT ERRED WHEN IT BARRED
BONNIE'S EXPERT FROM TESTIFYING AT THE
PLENARY HEARING, DEPRIVING BONNIE OF A
CRITICAL WITNESS ON REBUTTAL.

POINT IV
THE COURT ERRED IN ITS DETERMINATION OF THE ISSUES SURROUNDING THE A-20 ACCOUNT.

A.  THE COURT ERRED IN ITS ASSESSMENT AND DISTRIBUTION OF INTEREST INCOME IN THE A-20 ACCOUNT.

B.  THE COURT FAILED TO ASSESS THE RELIABILITY OF KENNETH'S AND RICHARD'S TESTIMONY REGARDING THE SOURCE OF FUNDS IN THE A-20 ACCOUNT.

  1.  The Burden of Production.

  2.  The Need for an Assessment of Reliability.

  3.  The Speculative Nature of the Amount of Funds.

  4.  The [E]ffect of the Appellate Division's Decision.

  5.  Adverse Inference Arising from Missing Records.

  6.  Respondents['] Disposition to Deprive Bonnie of Her Right to Equitable Distribution.

C.  THE COURT SHOULD HAVE ATTRIBUTED AN ADDITIONAL $200,000 IN INCOME TO PRINCETON AIR.

D.  THE COURT ERRED IN FAILING TO CONSIDER THE PRESENT VALUE OF

A-0499-18

MARITAL FUNDS EMPLOYED IN THE DKN EXCHANGE.

E.    THE COURT ERRED IN FAILING TO CONSIDER INTEREST DUE UNDER RULE 4:42-11(a).

POINT V
THE COURT ERRED IN ITS DETERMINATION OF THE ISSUES SURROUNDING BONNIE'S MOTION FOR COSTS, EXPENSES AND ATTORNEYS FEES ON APPEAL AND ON REMAND.

A.    THE COURT'S UNFAIR FAILURE TO ATTRIBUTE ANY BLAME TO THE NIERENBERGS FOR CAUSING THE MATTER TO SPIRAL OUT OF CONTROL.

B.    THE COURT'S UNFAIR COMMENT ON PRIVILEGED COMMUNICATIONS IN MEDIATION, WHICH THE COURT MISCHARACTERIZED.

C.    THE UNFAIR CRITICISM OF APPELLANT'S DISCOVERY.

D.    THE UNFAIR AND ERRONEOUS CHARACTERIZATION OF RICHARD NIERENBERG'S TESTIMONY.

E.    THE UNFAIR AND ERRONEOUS CHARACTERIZATION OF THE $416,500.

F.    THE COURT UNFAIRLY FAILED TO REQUIRE KENNETH TO DISCLOSE THE EXTENT OF ATTORNEY FEES INCURRED ON APPEAL AND ON REMAND.

POINT VI
THE COURT ERRED IN FAILING TO CONDUCT A PLENARY HEARING ON BONNIE'S MOTION TO REOPEN BASED ON NEWLY DISCOVERED EVIDENCE OF THE VAMOS LOAN.

A.      BONNIE'S MOTION WAS NOT TIME BARRED BY THE DOCTRINE OF RES JUDICATA.

B.      BONNIE ESTABLISHED A PRIMA FACIE CASE THAT MARITAL FUNDS MAY HAVE BEEN USED TO FINANCE THE VAMOS LOAN.

POINT VII
THE TRIAL COURT ERRED WHEN IT DISMISSED BONNIE'S COMPLAINT WITH PREJUDICE BECAUSE THE COMPLAINT, WHEN EVALUATED IN ACCORDANCE WITH THE APPLICABLE STANDARD, ESTABLISHED A FUNDAMENT OF A CAUSE OF ACTION.

A.      THE COURT FAILED TO ACCEPT AS TRUE THE ALLEGATIONS IN THE COMPLAINT IN SUPPORT OF BONNIE'S CAUSE OF ACTION FOR UNJUST ENRICHMENT.

B.      THE COURT MISCHARACTERIZED THE "TWO CONSPIRACIES."

C.      THE COURT MISAPPLIED THE LAW ON CONSPIRACY.

D.      THE COURT FAILED TO ADDRESS VARIOUS OTHER CAUSES OF ACTION.

9

We reiterate that on remand we directed the trial judge to limit the factual inquiry to the extent to which, if at all, Princeton Air funds were commingled with Richard's funds in the A-20 account. The focus was to ascertain the appropriate percentage of ownership, following limited discovery and the presentation of proofs regarding account funds. The remand was not intended to reopen any other aspect of the earlier litigation.

We did allow plaintiff the opportunity to address the recusal issue:

> On remand, the trial court will have the opportunity to address the allegations, raised for the first time on appeal by [plaintiff], that there was a $100,000 transfer in July 2004 from the A-20 account to an attorney trust account at the law firm in which the trial judge was previously employed. Kenneth contends this transfer was related to the sale of an airplane. [Plaintiff] appears to have been aware of the $100,000 transfer during the trial, but did not raise the issue then. She now contends that this transaction provides a basis to disqualify the trial judge. Because this issue was raised for the first time on appeal, the judge was not accorded the opportunity to address this allegation.
>
> [Nierenberg, slip op. at 17-18.]

Also remanded was plaintiff's request for $331,309.81 in legal fees for the cost of the appeal.

10

Defendant was extensively deposed and testified about the A-20 account, which was managed by his father. Funds were deposited and withdrawn related to airplane equipment and airplane sales, and commissions generated by those transactions, hence the potential that unaccounted-for Princeton Air money was involved.

In making additional findings, the court adjusted Princeton Air's valuation by incorporating $10,599 in interest earned in the A-20 account attributable to Princeton Air's activities, increasing earnings by $1766.50 for 2005. When the $1766.50 figure was capitalized, pursuant to the formula used in the prior proceeding, additional corporate earnings increased Princeton Air's value by $8745.05. Thus, the total value of Princeton Air in 2005 increased by $10,599 in interest plus $8745.05, a total of $19,344.05. Plaintiff's half of that sum came to $9672.03. The ruling was based on ample credible evidence in the record and a prior formula, the use of which we previously affirmed. See id. at 28.

Now on appeal, plaintiff raises a number of meritless arguments attacking the judge's decision and his analysis that do not require discussion in a written opinion. R. 2:11-3(e)(1)(E). They include the argument that the judge improperly limited discovery and improperly refused to appoint a discovery master.

Discovery decisions are discretionary. <u>Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc.</u>, 230 N.J. 73, 79 (2017); <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011). Clearly, the judge did not abuse his discretion by limiting discovery to the remand decision.

Plaintiff also made a baseless claim of spoliation of bank records. As the judge opined, there was no proof whatsoever that documentary or other evidence was destroyed. Defendants produced extensive records during the divorce litigation, and plaintiff was provided a blanket authorization to obtain all relevant records from Merrill Lynch, the firm at which the A-20 account was maintained. That the many-years-old account information could not be reconstructed is unsurprising. Plaintiff failed to demonstrate spoliation and is not entitled to an adverse inference as a result.

Equally without merit is plaintiff's claim that she should have been permitted to obtain the current value of certain Philadelphia properties she alleged were purchased with defendant's disproportionate share of A-20 funds. In our original decision, we rejected this novel claim, and plaintiff has not established any reason that ruling should change. <u>See</u> <u>Nierenberg</u>, slip op. at 25.

Plaintiff sought to have her equitable distribution expert testify at the remand hearing—even though none of the expert's five earlier reports addressed the A-20 account. Plaintiff, pursuant to Rule 4:17-4(e), was required to produce an expert's report about the subject in advance of the hearing, and did not do so. Thus, the judge's decision barring the expert's testimony was not an abuse of discretion.

Plaintiff further contends that the trial court erred by not taking into account the present value of marital funds used in the transaction referred to as the DKN 1031 exchange. We previously rejected this novel theory. Nierenberg, slip op. at 25.

Plaintiff also seeks post-judgment interest. See R. 4:42-11(a). Defendant was required to pay the sum the judge ultimately awarded within a specified period of time. He did so. Therefore, no interest is due.

Plaintiff sought $331,309.81 in legal fees for the cost of her appeal, and $109,639.59 for the cost of representation during the remand hearing. The judge awarded the sum of $9672.03 in fees for the remand, limiting the amount to the extent of plaintiff's recovery. As he pointed out:

> [A]fter five full years of post-judgment litigation and the incurrence of another $440,000 in professional fees, [p]laintiff's so-called "victory" was an award of less than 3% of the monies spent on the appeal and remand

proceeding. Interestingly, the increase in equitable distribution did not result from any argument raised by [p]laintiff['s] counsel, but from an inquiry raised by the Appellate Division sua sponte. And the information that supported this minor adjustment was in [p]laintiff's possession all the time: it had just never been employed by [p]laintiff and her professionals when valuing Princeton Air.

. . . .

There is simply no basis or authority to expose [defendant] as a matrimonial party to the costs associated with [p]laintiff's unsuccessful prosecution of fraud claims against his parents and their companies. However, [p]laintiff and her professionals have made no attempt to allocate even a dollar of legal expenses to those activities.

The judge limited the legal fees on the appeal to the $50,000 cap to which counsel agreed. We see no error in the judge's consideration of the application and the relevant rules and caselaw. R. 2:11-3(e)(1)(A).

Finally, plaintiff argues the judge's prior involvement—tangential or otherwise—in three transactions related to defendant created the appearance of unfairness, warranting his recusal. As we said in our prior decision, the trial judge acted as counsel for a bank years before these proceedings began. Nierenberg, slip op. at 8-19. In that capacity, he prepared a mortgage note "evidencing funds loaned to acquire Princeton Airport." Ibid. The judge

14

disclosed the prior representation to the parties, and at that juncture no one objected because it was entirely neutral information.

The second transaction cited by plaintiff stemmed from "a $100,000 wire transfer in July 2004 from the A-20 account to an attorney trust account at the law firm in which the trial judge was previously employed." Id. at 19. Plaintiff raised this issue for the first time on appeal, which we remanded as the judge had not been given a prior opportunity to address it. Ibid. On remand, the judge explained that neither he, nor the former law firm where he worked, ever represented the defendants. The judge further noted that "neither [he] nor [his] former [l]aw [f]irm ever had any business relationship with [d]efendants." In light of the judge's "[de minimis], irrelevant and tangential involvement" with this transaction, the judge reasonably found it would not impede his ability to "conduct the remand hearing in a fair and impartial manner."

Plaintiff's attorney thereafter discovered another transaction in which the judge's law firm represented a longtime employee of Princeton Air, Jeffrey Vamos, when he purchased a home. In that instance, the buyer was represented by a member of the judge's firm. For some unknown reason, the deed to the property indicates it was to be returned to the judge and not the attorney in the firm who represented the employee. This transaction occurred in 2006.

15

The transaction did not create a conflict for the judge who presided over the divorce. A years-earlier transaction, in which the judge's former law firm represented a party whose interest was contrary to defendant's, simply is not a basis for recusal.

DOCKET NO. A-1743-18

Plaintiff argues the trial court erred in failing to reopen equitable distribution because of new information that marital funds may have been used to finance the loan to Vamos. Plaintiff discovered the transaction prior to the remand hearing but after the appeal decision. The remand hearing occurred on July 27, 2018. It lasted one day.

A mortgage and mortgage note in the amount of $382,000 named Richard as mortgagor, and Richard added Kenneth's name to the mortgage. Kenneth certified that he was unaware of the transaction. He reviewed his late father's files and discovered five documents related to that transaction which he provided to the court. They included a domestic wire transfer from Richard to the attorney in the judge's former firm, in the amount of $382,000 dated June 12, 2006.

Defendant submitted Vamos' certification in support of his position he knew nothing about the transaction and did not benefit from it. Vamos certified

A-0499-18

that he had approached Richard as an investor in the real property, who would be entitled to six percent interest on the loan, and fifty percent of the appreciation when the home ultimately sold. Vamos, not Richard, retained the judge's former law firm, and an attorney at the firm prepared the mortgage.

Vamos could not explain the reason defendant was on the documents, as it was Richard with whom he negotiated, and Richard who provided the funds for the purchase. Vamos never actually made any payments to anyone on account of the mortgage. When plaintiff attempted to subpoena Richard's bank records to explore the transaction, they were not available because they were more than seven years old.

The judge who heard plaintiff's application with regard to the Vamos transaction—different from the trial judge who conducted the remand—denied plaintiff's application to reopen equitable distribution. He opined that such claims were barred by the doctrine of res judicata and because more than five years had passed since the divorce judgment entered. The motion was untimely, and plaintiff had not established any extraordinary circumstances which would justify reopening it pursuant to Rule 4:50-1(f). In the absence of any credible evidence that defendant even knew about, much less benefitted from, the Vamos

A-0499-18

transaction, the judge found no basis to reopen equitable distribution and denied plaintiff's application.

In light of the total absence of proof that defendant had knowledge, involvement in, or benefitted from the Vamos mortgage, there is no need for us to reach the question of whether as a matter of law plaintiff was entitled to revisit equitable distribution. See R. 2:11-3(e)(1)(E).

<u>DOCKET NO. A-0499-18</u>

Finally, we reach the issue of the dismissal of plaintiff's Law Division complaint with prejudice because of her failure to state a claim. See R. 4:6-2(e). In dismissing the claims against Steven Nierenberg and the Nierenberg Family Trusts, the court explained:

> According to the Complaint, Kenneth Nierenberg "enlist[ed]" Steven and the Nierenberg Family Trusts in a conspiracy in order to purchase the marital home at the sheriff's sale and in order to resell the property for a substantial profit. However, black letter law establishes that there is nothing illegal, improper or inequitable that prevents parties like Steven and the Nierenberg Family Trusts from participating, directly or indirectly, in a sheriff's sale.
>
> Further, [p]laintiff's legal assertion that it was improper for Steven and the Nierenberg Family Trust to conspire with Ken and others to bid at the sheriff's sale ignores the fact that Ken could have properly bid at the sheriff's sale.

18

[(citation omitted).]

In dismissing the claims against defendant, the court further explained:

> Plaintiff's [c]omplaint asserts that Kenneth participated in two conspiracies, one, to withhold equitable distribution payments so as to force the marital home into foreclosure and, two, by enlisting the other defendants in submission of a successful bid at the sheriff[']s sale. For the same reasons set forth above, there is no legal or equitable impediment preventing Kenneth from participating, directly or indirectly in a bid at the sheriff's sale. Accordingly, that claim must be dismissed with prejudice.
>
> The same is true of the first conspiracy claim asserted by [p]laintiff. According to [p]laintiff, Kenneth withheld required payments of equitable distribution in order to insure [sic] that [p]laintiff did not have the resources to make payments on the line of credit. However, in a court-filed certification that this Court may consider on a motion to dismiss, [p]laintiff herself has sworn to the following:
>
>> With respect to the carrying costs of the house, Ken knows that I am unable to make these payments in my current financial condition. Ken proposed the taxes and home equity payments be deducted from the equitable distribution he still owes me . . . . I cannot agree to this . . . .
>
> The only "facts" outside of the [c]omplaint which [d]efendant argues involve the offer by [d]efendant, Kenneth, to pay the taxes and line of credit to hold off the foreclosure. These facts were conceded by the [p]laintiff, so they can be considered. Plaintiff's own sworn statement makes clear that Kenneth never held

19

back his equitable payments in an effort to force the property into foreclosure.

Plaintiff's [c]omplaint, read in connection with her own sworn statements in the [c]ourt record, fails to plead any viable claim that Kenneth withheld the equitable distribution payments in order to force the marital home into foreclosure. As the Appellate Division has recognized, when the allegations in a complaint are contradicted by documents that a court may properly consider, the document controls. Myska v. [N.J. Mfrs.], Ins. Co., 440 N.J. Sup[er. 458] (App. Div. 2015). Thus, no valid claim for a "forced foreclosure."

A pleading must "contain a statement of facts on which [a] claim is based, showing that the pleader is entitled to relief, and a demand for judgment for [that] relief." R. 4:5-2. "Pleadings must fairly apprise the adverse party of the claims and issues to be raised at trial." Spring Motors Distribs., Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29 (App. Div. 1983), aff'd in part & rev'd in part on other grounds, 98 N.J. 555 (1985). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-2 (2020).

We review dismissals for failure to state a claim de novo, applying the same standard as the trial court. Donato v. Moldow, 374 N.J. Super. 475, 483 (App. Div. 2005). Generally, motions for failure to state a claim should be granted only in "the rarest of instances." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 771-72 (1989). On such a motion, "the inquiry is

20

confined to a consideration of the legal sufficiency of the alleged facts apparent on the face of the challenged claim." Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 551 (App. Div. 1987) (quoting P. & J. Auto Body v. Miller, 72 N.J. Super. 207, 211 (App. Div. 1962)). "The court may not consider anything other than whether the complaint states a cognizable cause of action." Ibid.

Furthermore, on a challenge to the adequacy of the complaint, "all facts, reasonable inferences and implications are to be considered most strongly in favor of the pleader." Spring Motors, 191 N.J. Super. at 29-30. See also Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 268-69, 282 (2004). The court must search the pleading in depth and with liberality to determine whether a cause of action exists "even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown, 116 N.J. at 746. It should not be concerned with "the plaintiff's ability to prove the facts alleged." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). "[T]he test for determining the adequacy of a pleading [is] whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

Plaintiff alleges that defendant acted in concert with Steven and the Nierenberg Family Trust to thwart her continued ownership of the marital home.

21

Plaintiff also alleges that she elected to purchase defendant's interest in the former marital home based in part on his obligation to make equitable distribution payments totaling $199,115.46. By conspiring to improperly withhold equitable distribution and alimony payments from plaintiff, she asserts, defendants prevented her from paying the carrying costs on the former marital home, causing it to go into foreclosure, so that defendants could purchase it at a foreclosure sale.

The Supreme Court has previously defined a civil conspiracy as:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.
>
> [Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)).]

The trial court improperly focused on whether plaintiff could actually prove such a conspiracy, Sickles, 379 N.J. Super. at 106, rather than whether a cause of action was "suggested" by the facts alleged, Printing Mart-Morristown, 116 N.J. at 746.

A-0499-18

Indeed, the court pointed to the fact that defendant offered to make the payments on the home equity line and the property taxes so long as those payments were deducted from his equitable distribution obligation, thus establishing that defendant "never held back his equitable payments in an effort to force the property into foreclosure." However, such a conclusion is not supported by the offer, since the offer does not explain why defendant simply did not pay his equitable distribution obligations as required by the dual judgment of divorce and the supplemental judgment of divorce, nor does the offer establish that defendant would have actually paid the carrying costs on the marital property as promised. Nevertheless, those considerations relate to whether plaintiff could prove her case, not whether she "suggested" a cause of action. See ibid.

Furthermore, the trial court misinterpreted plaintiff's civil conspiracy claims as involving two separate conspiracies: "Plaintiff's [c]omplaint asserts that [defendant] participated in two conspiracies, one, to withhold equitable distribution payments so as to force the marital home into foreclosure and, two, by enlisting the other defendants in [the] submission of a successful bid at the sheriff[']s sale." However, the complaint alleges that defendant conspired with Steven and the Nierenberg Family Trust to thwart her acquisition of the marital

23

home, force the former marital home into foreclosure, and purchase it at a discounted price at the sheriff's sale.

Under the trial court's reading of the complaint, defendant conspired with himself "to withhold equitable distribution payments so as to force the marital home into foreclosure." Not only is the court's reading of the complaint untenable, it did not consider "all facts, reasonable inferences and implications" in plaintiff's favor. Spring Motors, 191 N.J. Super. at 29-30.

Finally, the court did not address the other causes of action set forth in the complaint and the reasons they did not allege cognizable causes of action. See R. 1:7-4(a) ("The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right . . . ."); Curtis v. Finneran, 83 N.J. 563, 570 (1980) (holding that the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions). Thus, we remand the matter to allow plaintiff the opportunity to amend her pleadings.

We affirm the judgments entered under docket numbers A-1292-18 and A-1743-18, and reverse docket number A-0499-18. We remand the latter, but do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0499-18